**Philip GAYLORD, Plaintiff,**

v.

**MIAMI–DADE COUNTY, Defendant.**

**No. 95–2035–CIV.**

United States District Court,
S.D. Florida.

July 1, 1999.

Neil H. Chonin, Chonin, Sher & Navarette, Coral Gables, FL, for Plaintiff.

William X. Candela, Asst. Dade County Atty., Miami, FL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NESBITT, District Judge.

### BACKGROUND

On September 19, 1995, Plaintiff Sergeant Phillip Gaylord ("Gaylord"), a Mia-

mi–Dade County Police Officer, filed a three count complaint against Defendant Miami–Dade County ("the County") and individual Defendants Police Chief Nelson Oramas ("Oramas") and Major Madeleine Pearson ("Pearson"). This Court has jurisdiction under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* Count I is a claim for overtime payment under 29 U.S.C. § 207(a) of the FLSA for approximately 87 hours of overtime per week above and beyond Gaylord's regular 40 hour work week. Counts II and III of the Complaint, the only counts against the individual Defendants, were voluntarily dismissed.

After a bench trial, the Court enters these findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52. After considering the evidence presented at trial, including the testimony, demeanor, and credibility of the witnesses, as well as all legal arguments, the Court finds against the Plaintiff Gaylord and in favor of the Defendant County as to Gaylord's claim for the following reasons.

### GAYLORD'S CLAIM

Gaylord joined the Miami–Dade Police Department ("MDPD") in 1978 and continues to be employed to date by MDPD. In December 1991, MDPD promoted Gaylord to sergeant and assigned him to the Uniform Operations Division, Police Operations Bureau ("POB"), Key Biscayne Unit. Two years later, in September 1993, MDPD assigned Gaylord to sergeant of the Transit Squad. The Transit Squad was a unit of the POB that handled law enforcement duties relating to the Metrorail, the Metromover, County buses, and other events impacting on County transit. Gaylord remained in that position until May 1995. Gaylord's history as a police officer includes being a Police Benevolence Association ("PBA") member of longstanding.

Gaylord claims that during the his time as sergeant of the Transit Squad he worked an average of 127 hours per week, 87 of which were overtime hours. Although Gaylord admits that he was compensated for some 1,800 hours of overtime, he states that the County still owes him compensation for approximately 4,000 more hours of overtime work.

When Gaylord became supervisor of the Transit Squad in September 1993, the Transit Squad consisted of seven officers working eight hour shifts that ran from 7 a.m. to 3 p.m. and 4 p.m. to 12 a.m., seven days a week. Gaylord reported to Captain Larry Mathieson ("Mathieson") who, in turn, reported to Major Pearson. Pearson reported to Police Chief Oramas. During most of Gaylord's time as sergeant, there was no lieutenant serving between him and Mathieson in the chain of command. In March 1995, Oramas reorganized the POB, replacing Mathieson with Captain Jerry Burgin, and installing Lieutenant Brian Ackerman in the chain of command between Captain Burgin and Gaylord.

Gaylord testified that he met with Mathieson and Pearson shortly after his assignment as supervisor of the Transit Squad. Gaylord stated that at the meeting Pearson told him he was to supervise and be responsible for the Transit Squad during all shifts. Gaylord testified that Pearson informed him that he would not be compensated for any overtime he worked in supervising the Transit Squad because there were insufficient funds in the POB budget to pay for overtime and that he should not report these overtime hours, although he could report overtime worked on certain specialized assignments that were funded by the Miami–Dade Transit Authority ("MDTA"). Without objection, POB records were introduced reflecting overtime budget surpluses for 1993 and 1994.

During his tenure as sergeant of the Transit Squad, Gaylord filled out Daily Activity Reports, Payroll Attendance Records, and overtime slips recording the time spent each day on work activities. While sergeant of the Transit Squad, Gaylord submitted 106 overtime slips for 1,800 hours of overtime work. Mathieson ap-

proved all of Gaylord's requests for overtime compensation in the total amount of $58,000. A substantial portion of this overtime was paid for by MDTA for specialized projects such as the "Bus Detail." The Bus Detail placed plainclothes Transit Squad officers as decoys on targeted buses. Although much of Gaylord's paid overtime was for MDTA projects, some of the paid overtime was for POB funded work.

Gaylord did not include any of the 4,000 hours of alleged uncompensated overtime work in any of his administrative records. Gaylord claims that he worked these additional uncompensated overtime hours because he was unable to complete all of the administrative tasks of his job during an eight-hour shift, and because he had been directed to supervise all of the Transit Squad shifts. Gaylord testified that supervising the Transit Squad consisted of monitoring his police radio during all shifts, taking phone calls from Transit Squad officers during all shifts, and occasionally meeting with Transit Squad officers after the conclusion of his regular shift. Gaylord stated that he complained to Mathieson and Pearson about his hours, but that no action resulted from these discussions. Gaylord acknowledged that he was aware that an order from a superior officer to perform uncompensated overtime work violates of MDPD procedures, and that he worked some 127 hours a week without recording most of his overtime, which he knew violated MDPD procedures. His stated reason for not following established procedures was that he believed the MDPD was a para-military type organization in which he was bound to follow the directions of his superior officer. Gaylord also testified that he was aware that when overtime funds are unavailable, an officer may receive "compensatory time" which is leave time in lieu of overtime pay. It is undisputed that Gaylord never requested compensatory time for his alleged uncompensated overtime work.

### MDPD POLICY

Sworn law enforcement personnel at MDPD must follow the Administrative Orders and Standard Operating Procedures, the MDPD Manual ("the Manual"). Overtime policies for MDPD officers are set forth in the Manual. The Manual states that "[e]mployees will not engage in any work-related activity without prior approval of their supervisor ... All employees are required to be punctual for work and complete their work assignments within assigned duty hours." Administrative Order 2–07. In order for an officer to obtain overtime compensation, he or she must submit an overtime slip pursuant to Administrative Order 2–07. The overtime slip is then reviewed by the officer's immediate supervisor and either approved or disapproved.

If an officer needs to perform work beyond his scheduled shift, a request for shift extension is to be obtained from the immediate supervisor. A shift extension is work performed before or after a regular eight hour shift that is charged to MDPD.

In June 1994, MDPD published an overtime policy update requiring officers to record accurately their time worked and prohibited officers from working overtime without reporting it. MDPD also requires officers to submit Dailey Activity Reports that supply information for recording an officer's activities. Officers must report all regular and overtime hours worked on the Daily Activity Reports. Finally, MDPD requires officers to record their work hours on Payroll Attendance Records. MDPD pays officers on the basis of time worked as recorded on their Payroll Attendance Records. Payroll Attendance Records are signed by the officers to indicate that the regular and overtime hours reported are accurate.

### TESTIMONY OF OTHER OFFICERS

Before Gaylord was assigned the position of sergeant of the Transit Squad, two other officers served in that position. Sergeants Glen Cook ("Cook") and Jose Martinez ("Martinez") preceded Gaylord as Transit Squad sergeant, following the same chain of command in which no lieu-

tenant served between themselves and Captain Mathieson. Cook was Transit Squad sergeant from May 1993 to July 1993. Cook's duties and responsibilities as Transit Squad sergeant included responding to calls for service as a backup unit and patrolling the Metrorail and Metromover systems. He would also review the Daily Activity Reports of the Transit Squad officers, review and approve overtime requests, prepare weekly work schedules for Transit Squad officers, and respond to calls or special assignments. Despite the absence of a lieutenant in the chain of command, Cook testified that he regularly completed all of his assignments within his eight hour shift and was not required to monitor his police radio after his regular shift. When Cook was off-duty, the Transit Squad officers on the weekend shifts were to direct any inquiries to the on-duty platoon commander or any other sergeant. Martinez replaced Cook and served as the Transit Squad sergeant from July 1993 to September 1993. His duties and responsibilities were the same as Cook's.

During Gaylord's tenure as sergeant of the Transit Squad, Richard Stankiewicz ("Stankiewicz") served as acting sergeant whenever Gaylord was absent or on vacation. Stankiewicz testified that as acting sergeant, he did not work overtime and did not monitor his radio after the conclusion of his shift.

During the same period, Lieutenant John Carrell ("Carrell") was the afternoon and Saturday shift platoon commander. In this capacity, Carrell was responsible for responding to any inquiries from Transit Squad or General Investigative Unit officers. Like the Transit Squad, the General Investigative Unit had a day and afternoon shift, seven days a week. Neither unit assigned a sergeant to the afternoon or weekend shifts. Officers of the Transit Squad and General Investigative Unit were to contact Carrell if supervisory input was needed during afternoon or weekend shifts, since Gaylord worked the weekday morning shift. Carrell testified that he was unaware that any Transit Squad

officers were contacting Gaylord during his off-duty time on afternoon and weekends.

Both Major Pearson and Captain Mathieson testified at trial that they never told Gaylord to perform overtime work for which he would not be compensated. Pearson and Mathieson were aware of FLSA's mandate that hourly employees can not work more than 40 hours a week without overtime compensation, and that working unreported overtime is prohibited. In addition, Mathieson and Pearson both testified that they were not aware that Gaylord was working the alleged overtime. Although Mathieson stated that he did occasionally call Gaylord at home, he explained that these call were brief and not predominantly work-related.

In March of 1995, Pearson advised the Transit Squad officers that she was transferring them to another unit because of continued complaints from other POB members and the PBA about overtime distribution. Gaylord immediately complained to Police Chief Oramas and the PBA about Pearson's decision to reassign the Transit Squad officers. Within a week Oramas met with the Transit Squad officers and rescinded Pearson's decision to transfer the officers. Shortly thereafter, Gaylord's attorney sent a letter to Pearson advising her that Gaylord was entitled to unpaid overtime hours. This letter, sent in early May of 1995, is the earliest record indicating that Gaylord worked unpaid overtime hours for the Transit Squad. After receiving the letter, Pearson directed Lieutenant Ackerman to publish a memorandum prohibiting the Transit Squad officers from contacting Gaylord after the conclusion of his shift.

### *APPLICABLE LAW*

The FLSA requires employers to pay overtime to employees who are "[e]mployed" more than forty hours per week. 29 U.S.C. § 207(a)(1); *Dade County v. Alvarez*, 124 F.3d 1380, 1384 (11th Cir.1997). The term "employ" is defined as "to suffer

or permit to work." 29 U.S.C. § 203(g); *Reich v. Department of Conservation and Natural Resources, State of Ala.,* 28 F.3d 1076, 1082 (11th Cir.1994). "Work not requested but suffered or permitted is work time." 29 C.F.R. § 785.11. If an "employer knows or has reason to believe that the employee continues to work," hours will count for the purpose of overtime under the FLSA. 29 C.F.R. § 785.13; *Reich,* 28 F.3d at 1082.

■ Therefore, in order for Gaylord to recover for uncompensated overtime work under FLSA, he must show that: (1) he worked overtime hours without compensation, and (2) that the County had knowledge, or should have had knowledge, of his overtime work. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946); *Reich,* 28 F.3d at 1082. The burden shifts to the employer to show that an employee did not perform overtime work if the employer's records are inaccurate or inadequate, even if the employee cannot offer convincing substitutes, if the employee produces sufficient evidence to show as a matter of just and reasonable inference that he was improperly compensated. *Anderson,* 328 U.S. at 687–88, 66 S.Ct. 1187; *see also Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 471 (11th Cir. 1982); *Etienne v. Inter–County Security Corp.,* 1999 WL 380322 (11th Cir.1999).

■ As a matter of law, an employee is not "working" simply because that employee must be on call if needed. *Birdwell v. City of Gadsden,* 970 F.2d 802, 808–09 (11th Cir.1992) (holding detectives not working as a matter of law where on call with few restrictions); *Avery v. City of Talladega,* 24 F.3d 1337, 1347 (11th Cir. 1994) (holding meal time was not compensable simply because officers had to leave their radios on); *Bright v. Houston Northwest Med. Ctr. Survivor, Inc.,* 934 F.2d 671, 674 (5th Cir.1991) (on-call employee not working even though no one shared his duties, he could not go on vacation and he was continually on call). Under the *de minimis* doctrine, brief periods of off-duty time spent working are deemed *de minimis* and therefore not compensable. *Lindow v. U.S.,* 738 F.2d 1057, 1062 (9th Cir. 1984); *Bridges v. Amoco Polymers, Inc.,* 19 F.Supp.2d 1375 (S.D.Ga.1997) (granting defendant's motion for summary judgment because time spent by employees was minimal and thus not compensable under FLSA's *de minimis* doctrine).

■ An employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur. *Brumbelow v. Quality Mills, Inc.,* 462 F.2d 1324, 1327 (5th Cir.1972) (upholding judgment for employer that employee was estopped from claiming more hours than those submitted in time sheets); *Newton v. City of Henderson,* 47 F.3d 746, 748–49 (5th Cir. 1995) (reversing FLSA award based on constructive knowledge where employer paid employee based on time sheets); *Davis v. Food Lion,* 792 F.2d 1274, 1277–78 (4th Cir.1986) (affirming judgment for employer where employee falsified time records to underreport time); *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981) ("[W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207").

## DISCUSSION

■ The Court finds that Gaylord failed to demonstrate that he worked over 4,000 uncompensated overtime hours over a span of almost two years, working some 127 hours a week as a sergeant in the Transit Squad. The enormous amount claimed for overtime is so substantial, and for such an extended period of time, as to make it implausible that Gaylord could reasonable rely for recovery on his supervisor's alleged oral directive that he supervise and be responsible for the Transit Squad "at all times." With only 168 hours

in a week, for a period of twenty months Gaylord would have had less than six hours a day for eating, sleeping, and any other activities outside of work. However, despite the clear burden such a schedule would have placed upon Gaylord, he contends that he continued to work these hours without being compensated for overtime, without having filed a formal complaint with MDPD nor submitting a formal request for overtime pay, compensatory time, or a reduced workload. Additionally, although Gaylord was a longstanding member of the PBA, he did not report to or consult with the PBA that he was being denied compensation for overtime hours worked.

It is not disputed that specific directives are set forth in the MDPD Manual for the recording of work hours and overtime hours. Gaylord was aware of his responsibility to record accurately and truthfully Payroll Attendance Records, Daily Activity Reports, and overtime slips. Even though Gaylord claims he did not comply with the manual's procedures in obedience to his superiors' orders not to report his overtime, immediately upon learning that the Transit Squad was to be disbanded he complained to Chief Oramas and to the PBA. It defies reason that an officer would work thousands of overtime hours without compensation in deference to the orders of his superior and yet, as soon as he learned that the position that causing him to work some 4,000 overtime hours without compensation was threatened by the same superior, he immediately complained to the Chief of Police and the PBA.

Sergeants Cook and Martinez, officers who previously held Gaylord's position, testified that they were not required to work overtime to complete the responsibilities of that job. Even if Gaylord's workload was greater than that of his immediate predecessors, it is difficult to imagine that his increase in work would be so dramatic. Officer Stankiewicz, who acted as the sergeant of the Transit Squad during Gaylord's absence, testified that he was not required to work overtime in that position. Gaylord presented no corroboration of his overtime hours worked by way of contemporaneous records or otherwise, with the exception of his wife, who testified that she complained to Mathieson that Gaylord was working too hard. Contrary to Gaylord's position, both Mathieson and Pearson, who are now retired from MDPD, denied that they told Gaylord to work overtime and to omit such work from his administrative records. Although Gaylord testified that Mathieson and Pearson instructed him not to report his overtime work because the POB had no funds from which to compensate him, in fact the POB had overtime budget surpluses during Gaylord's tenure as sergeant of the Transit Squad. Furthermore, Mathieson approved some 1,800 hours of overtime work by Gaylord. It is again unclear why Gaylord would follow appropriate procedures for reimbursement for some overtime assignments, but not others.[1]

■ A large portion of the unpaid overtime claimed by Gaylord was for monitoring the police radio during all Transit Squad shifts. Under applicable case decisions, merely monitoring a police radio does not constitute compensable overtime work under the FLSA under *Birdwell; Avery; Bright, supra.* Accordingly, Gaylord's claim for time spent monitoring his police radio is without merit.

Even assuming that Gaylord did work uncompensated overtime hours, his suit cannot succeed because he failed to demonstrate that the County knew or should have known about his unreported overtime hours. As previously stated, Mathieson and Pearson testified that they had no knowledge of Gaylord's alleged uncompensated overtime work. Since it was reasonable for Gaylord's supervisors to believe he was

---

1. Gaylord's statement that the overtime which he requested and was paid for was for the Bus Detail and other specialized details funded by MDTA does not explain why he also requested and was paid overtime for some POB funded overtime assignments, but not the overtime which is the subject of the suit.

only "on call" when he was not at work, Gaylord failed to show that his employer, the County, had knowledge of such extra work. In addition, Gaylord testified that the majority of his alleged overtime work took place at home. As Gaylord's supervisor's would have no independent means of knowing how Gaylord spent his time at home, and Gaylord's Daily Activity Reports, overtime slips, and Payroll Attendance Records did not include the claimed uncompensated overtime hours, there was no reason for his supervisors to believe that Gaylord was working the claimed overtime hours.

The burden of proof remain on Gaylord, as the County produced adequate and accurate contemporaneous employment records for Gaylord. Gaylord has failed to discharge his burden of demonstrating by a preponderance of the evidence that he was working as a matter of law the disputed overtime hours and that the County had knowledge or should have had knowledge of his overtime work.

### CONCLUSION

The Court concludes that Gaylord has not established any violation of the FLSA. Consequently, based upon the foregoing findings and conclusions, and pursuant to Federal Rules of Civil Procedure 58, it is hereby

**ORDERED AND ADJUDGED** that Final Judgment shall be entered in favor of Defendant Miami–Dade County and against Gaylord by separate order of the Court.