Kaplan, Mitchell H., J.
The plaintiff, Donna Vitali, on behalf of herself and all others similarly situated, filed this action against the defendant, Reit Management & Research LLC (RMR), asserting claims for violation of G.L.c. 151, §1A, the statute governing overtime compensation (Count I), breach of contract (Count II), and unjust enrichment/quantum meruit (Count III). Thereafter, Vitali voluntarily elected not to pursue Counts II and III. The case is presently before the court on RMR’s motion for summary judgment dismissing Count I, and Vitali’s motion for class certification. For the following reasons, RMR’s motion for summary judgment is ALLOWED. As the case cannot proceed without its sole class representative, the motion for class certification has become moot.
BACKGROUND
The facts revealed by the summary judgment record, viewed in the light most favorable to Vitali, the non-moving party, are as follows.
RMR is a private company that primarily manages real estate held in the portfolios of public companies. It has a principal place of business in Newton, Massachusetts, as well as regional offices in twenty other locations. It employs both professionals and support staff. Vitali is a former at-will employee of RMR. She worked in the accounts receivable department of RMR’s corporate office in Newton from March 1, 1999 until October 14, 2011; her job title was “accounts receivable accountant.” She worked with other employees in an area in which each employee had a short-walled cubicle. Vitali was an hourly employee, compensated at a rate of $25.80 an hour in October of 2011. Her assigned work hours were 9:00 a.m. to 5:00 p.m., five days a week. RMR provided its hourly employees, including Vitali, with a paid one-hour meal break each work day. In consequence, RMR paid her for forty hours of work per week even though she was only required to “physically work” (as RMR uses that term) for thirty-five hours. According to Vitali, employees took their lunch when they could; there was no set schedule. This was consistently RMR’s policy since she started working at the company in 1999.
Occasionally, Vitali worked during lunch. For example, during "monthly closes, quarter closes, conference calls for bad debt, audits ... [or during periods of] software conversion,” Vitali was required to work during lunch. Vitali estimates that from 1999 to 2011, she consistently worked three to four times per week during lunch. According to Vitali, “there was never a lack of work” but whether she worked three or four times a week during lunch “depended on what came up and the volume” of work. Vitali believes that the people who came to her with work during lunch could *289 verify that she typically worked three or four times a week during lunch.[2]
When Vitali first started working at RMR, the company required Vitali and other hourly employees to report their hours worked on paper time sheets. The paper time sheets were designed to cause employees to enter the following information: time in for the day; time out for lunch; time back from lunch; time out for the day; and any approved overtime hours worked. The paper time sheets also allowed employees to record their vacation, sick, and holiday hours. On the bottom left-hand comer of each time sheet, immediately above the employee’s signature, was the following statement: “[e]mployees may NOT work overtime without advance approval from their supervisor” and “lunch time are not hours physically worked in the computation of OT.”
The paper time sheets in the summary judgment record reveal that on Monday, April 13, 2009, Vitali worked from 9:00 a.m. to 6:00 p.m. with a one-hour lunch break from 12:30 p.m. to 1:30 p.m. She noted on the time sheet that she had worked one hour of overtime “to do [a] spreadsheet for Charles & Brian Hurley.” She did not, however, receive any overtime compensation that week because she worked only twenty-two hours: she took two vacation days that week, Thursday and Friday. No other paper time sheets in the summary judgment record reflect any occasion on which Vitali worked during lunch or demonstrate that she was entitled to overtime compensation. At her deposition, Vitali acknowledged that none of the paper time sheets that she submitted indicated that she worked overtime, but she asserted that “we were just told to put our eight-hour days.” Vitali did not identify the person who told her this or when it was told to her.
RMR installed an electronic time keeping system in February 2010 called “Kronos.” In connection with the roll-out of Kronos, RMR distributed a manual to employees with written instructions regarding its use and an e-mail message dated February 9, 2010. The manual included instructions and sections entitled “Logging In,” “Updating Time,” and “Vlewing/Updating/Approving Time.” It informed employees that they should contact Melissa Juppe or Mike Parcels in payroll with any issues. Vitali would not confirm that she received the manual, but Vitali definitely received the e-mail message about Kronos on February 9, 2010, because she forwarded it to her personal e-mail address less than an hour after it was sent to her RMR email address. The February 9th e-mail from Payroll Manager Jill Tweedlie stated:
Starting Monday February 15, 2010 all of Galen Corporate and Newton Corporate should start using Kronos in place of paper timesheets. For the first two weeks of use, please complete a paper time sheet to ensure all time is captured correctly. Your network log in and password will grant you access to Kronos. Please try to access Kronos as soon as possible so that we may avoid or correct any bugs prior to going live. If you have trouble accessing Kronos, please email me, not the RMR help desk.
Hourly employees—
Please note that only hourly employees will have to time punch when first arriving to work and when leaving for the day. Please be sure to only punch into work at your regular scheduled time unless over time has already been discussed with your manager. Hourly employees do not have to punch in and out for lunch. If you are to work through a lunch, please use the “hours worked” code and add the amount of in time worked in increments of .25 only.
Please let me know if you would like to set up training via phone or live. I am available to set up individual or group training.
Vitali began submitting electronic time sheets through Kronos on February 15, 2010. Vitali’s Kronos time records for the period February 15, 2010 through October 14, 2011 show that she was compensated for fifteen hours of overtime during that period.
Vitali never entered any time in Kronos for work performed during her one-hour paid lunch break. However, on March 15, 2010, Vitali e-mailed the payroll department to notify them that she had worked through lunch. The e-mail from Vitali to Mike Parcels stated: “I was not able to take lunch today due to so much Intercompany and meetings the rest of the week, so I wasn’t sure how I mark that on my time sheet/Kronos.” Parcels forwarded the message to Juppe, and Juppe responded to Vitali as follows:
Thank you for the heads up Donna. If your physically worked hours for this week is over 40 hours we can discuss how the lunch time for today should be recorded.
Thereafter, Vitali responded to Juppe:
Ok lady it was just for Monday 3/15/10 that I was not able to take lunch. You can tell me Monday what I need to do I guess. Thanks.
On Monday, March 22, 2010, Juppe sent Vitali the following e-mail message:
Thank you for your e-mail. There is nothing you need to do for this as your total hours for the week do not exceed 45. The hours listed on the Kronos timecard will be paid at your regular hourly rate.[3]
Vitali forwarded this March 22, 2010 e-mail to her personal e-mail account. This was the only occasion after Kronos was implemented that Vitali notified payroll that she had worked during her lunch hour. As 'discussed above, however, Vitali maintained at her deposition that she consistently worked three to four times per week during lunch.
*290 Vitali and all other RMR employees received a handbook. Vitali believes that she received a version of the handbook in 1999 and that she, along with other employees, received revised handbooks through email at various times. Section 5.6 of the handbook discussed time records and states:
All personnel "will be provided with either an electronic time recorder or paper timesheet. Electronic or paper timesheets are to be recorded daily and completed accurately. You must record the actual starting and stopping times and properly add the hours and minutes worked. Inaccurate reporting of hours worked will be deemed to be falsification of time records and will result in disciplinary action, up to and including termination. Tampering with electronic or paper timesheets will be grounds for disciplinary action, up to and including termination.
Paper timesheets should be turned in for approval as directed by your supervisor. Completed timesheets should show the total hours worked, and have all required signatures before being submitted to the designated individual.
Exhibit 2. Section 6.2.1 of the handbook sets forth RMR’s overtime policy as follows:
Overtime is compensated at the rate of time and a half for all hours worked in excess of forty hours per week (lunch period and benefit hours are not worked hours) or as provided for by state law. Overtime must be authorized by the appropriate manager/supervisor in advance by signing the Overtime Approval form. Employees may not work overtime without first obtaining advanced approval from their manager/supervisor. The signed Overtime Approval Form must accompany the timesheet for the week in which the employee worked overtime.
Id. (emphasis in original).
In addition, on September 2, 2010, Terry Gillietti, who was in charge of help desk employees at RMR’s IT department, sent a memorandum to the support services team, which explained RMR’s policies regarding lunches, breaks, and overtime. The memorandum states:
Lunch/Break
The policy is that employees either get a half hour lunch and two 15 minute breaks OR an hour lunch for an 8-hour shift.
A lunch schedule will be published. Any variance from the schedule must be approved by management.
Management needs to be informed as you leave for lunch and breaks, as well as when you return.
If people are late coming back from lunch, the next shift cannot leave for lunch until people return.
No more than two people can be on break at once. Keep this in mind during the lunch hours.
Any time you need to step away longer than a few minutes, especially if you leave the building, management needs to be informed.
Overtime
All overtime (more than 40 hours worked in one week) must be approved by management before the time is worked. They will need to know why overtime is needed and will make a decision depending on the situation.
When you take your lunch/meal break, these hours are not considered physical work hours, therefore, they do not count toward calculating overtime.
A minimum 30-minute lunch/meal break is strongly encouraged as it provides time to relax and restore yourself for the afternoon’s work. Massachusetts law states that employees must receive a 30-minute break after six hours of work and that an employee must be free to leave the workplace during this break. If you voluntarily give up your lunch/meal break, these hours count as physical hours worked and will be applied toward your overtime. If you must work though your lunch/meal break on occasion, please seek my approval in advance. Shifts will not be scheduled without lunch/meal breaks.
There is no evidence in the summary judgment record to suggest that Vitali, who did not work in the IT department, actually received or was aware of Gillietti’s memorandum.
RMR terminated Vitali in October of 2011. There is nothing in the record that suggests that the termination had anything to do with hours worked or time recording. On November 18, 2011, Juppe sent an e-mail to various employees stating that effective November 21, 2011, all hourly corporate Massachusetts RMR employees would be required to “punch in and out for lunch in Kronos.” This e-mail noted that “ [attached to this email is a description of this updated Kronos feature.” Vitali placed in the summary judgment record e-mails regarding eight employees generated between November 18, 2011 and January 17, 2012 that address recording time out for lunch on Kronos. See Exhibit 15. Some of these emails addressed authorized overtime work during lunch, some recording errors, some a worker working through lunch by choice, and one a request to swap lunch time for an early departure.
DISCUSSION
Summary judgment will be granted when there are no genuine issues of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). To prevail on summary judgment, the moving party must affirmatively demonstrate the absence of a triable issue, and that *291 the summary judgment record entitles it to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). “[A]ll evidentiary inferences must be resolved in favor of the [nonmoving party].” Boyd v. National R.R. Passenger Corp., 446 Mass. 540, 544 (2006).
The nonmoving party, however, cannot defeat a motion for summary judgment by merely asserting that facts are disputed. Mass.R.Civ.P. 56(e); LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, to defeat summary judgment, the nonmoving party must “go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). “Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient.” Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985).
The Claimed Violation of G.L.c. 151, §1A
In Count I, Vitali alleges that RMR violated G.L.c. 151, §1A. She asserts this claim pursuant to G.L.c. 151, §1B. See Somers v. Converged Access, Inc., 454 Mass. 582, 590 (2009) (“Damages for an employer’s violation of the overtime act [G.L.c. 151, §1A] are recoverable pursuant to G.L.c. 151, §1B, which, like G.L.c. 149, §150, permits a private cause of action and an award of treble damages, plus costs and reasonable attorneys fees, to a successful plaintiff’). RMR argues that it is entitled to summary judgment on Count I because RMR’s overtime policy complies with Massachusetts law and was properly applied to Vitali. RMR maintains that Vitali’s deposition testimony that she regularly worked through three or four lunches per week is insufficient to defeat summary judgment when it is undisputed that she failed to follow established procedures for obtaining authorization to work overtime and never reported working overtime, even though Kronos permitted an employee to record time worked during a lunch hour and the emails and manual supplied to employees explained how to do it. Vitali argues that RMR’s stated overtime policy does not insulate the company from liabilfiy if she worked more than 40 hours a week. At a hearing on April 30, 2014, the parties agreed that RMR’s motion for summary judgment would turn on a resolution of two questions: was there sufficient evidence in the summary judgment record to support a jury finding that (1) Vitali worked through her lunch hours and therefore more than 40 hours in a week; and (2) RMR knew or should have known (constructive knowledge) that Vitali worked more than 40 hours per week and was therefore entitled to overtime under G.L.c. 151, §1A? The statutory and case law that gives rise to these questions and further define them is set out below.
Under G.L.c. 151, §1A, “no employer in the commonwealth shall employ any of his employees in an occupation, as defined in section two, for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one-half times the regular rate at which he is employed.” An “occupation” as defined in G.L.c. 151, §2 is: “an industry, trade or business or branch thereof or class of work therein, whether operated for profit or otherwise, and any other class of work in which persons are gainfully employed, but shall not include professional service, agricultural and farm work, work by persons being rehabilitated or trained under rehabilitation or training programs in charitable, educational or religious institutions, or work by members of religious orders.” Massachusetts overtime legislation, G.L.c. 151, §1A, is substantially similar to its Federal counterpart, the Fair Labor Standards Act (FLSA), 29 U.S.C. §207. Swift v. AutoZone, Inc., 441 Mass. 443, 449 (2004). The parties agree that the court should look to federal court decisions construing FLSA for guidance in applying chapter 151 to the facts of this case.
“[Wjhere an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer’s failure to pay for the overtime hours is not a violation of. . . [the Fair Labor Standards Act].” Prime Communications, Inc. v. Sylvester, 34 Mass.App.Ct. 708, 711 (1993), quoting Forrester v. Roth’s I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981). Moreover, “[w]hen employer knowledge is at issue, it has consistently been held that the employee has the initial burden of proving that the employer knew or should have known of the overtime work.” Id. “Under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process . . . When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer’s ability to comply with the FLSA.” White v. Baptist Memorial Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012).
Turning to this case, although there exists no documentary or testimonial evidence that corroborates Vitali’s assertion that she regularly worked during her lunch hour three to four times a week during the period February 15, 2010 through October 4, 2011, at the summary judgment stage of this litigation her deposition testimony to this effect is sufficient to create a jury question on whether there were weeks in which Vitali was due overtime pay for hours worked in excess of forty but did not receive it.[4]
*292 Accordingly, RMR’s motion turns on the question whether there is adequate evidence in the summary judgment record to support a jury finding on which Vitali carries the burden of persuasion that RMR knew that Vitali was regularly working through lunch and therefore “physically” working more than forty hours a week, and not being paid at the overtime rate for those hours in excess of forty. The court concludes that there is not.
RMR informed its employees about its overtime policy through a handbook. The policy provided that “[o]vertime is compensated at the rate of time and a half for all hours worked in excess of forty hours per week (lunch period and benefit hours are not worked hours)” and that advanced authorization for overtime was required from a supervisor. RMR also reminded its employees about its overtime policy on its paper time sheets. On the bottom left-hand comer of each paper time sheet, immediately above the employee’s signature, was the following statement: “[e]mployees may NOT work overtime without advance approval from their supervisor” and “lunch time are not hours physically worked in the computation of OT.” Vitali signed numerous paper time sheets effectively acknowledging that she understood the overtime policy.
Moreover, RMR gave its hourly employees a paid. one-hour lunch break each work day. The summary judgment record establishes that RMR paid its hourly employees for forty hours of work each week, even though employees were only required to work thirty-five hours as a consequence of RMR’s paid daily lunch break policy. In theory, if an employee worked one-half of his/her one-hour allotment for lunch each day, that employee would still only work thirty-seven and a half hours a week. Furthermore, during the period of Vitali’s employment in which Kronos was in use, the company paid her for at least fifteen hours of overtime. It did this when the Kronos time records reflected that she was working in excess of forty hours. In consequence, Vitali clearly understood what steps she needed to take and how to record her time to receive overtime compensation. Nothing about RMR’s overtime policy or these facts suggest that RMR violated G.L.c. 151, §1A.
In addition, on March 15, 2010 (about one month after RMR first required its hourly corporate employees to report their time on Kronos), when Vitali had a question about recording her time on Kronos after she worked during lunch that day, she e-mailed RMR’s payroll department for clarification. On March 15, 2010, Juppe sent Vitali the following initial response: “If your physically worked hours for this week is over 40 hours we can discuss how the lunch time for today should be recorded.” That was a fair response to Vitali’s inquiry. A week later, on March 22, 2010, Juppe followed-up with Vitali, apparently after she had checked on the number of hours Vitali reported on Kronos for that week. She e-mailed Vitali that: “There is nothing you need to do for this as your total hours for the week do not exceed 45.”[5] In fact, Vitali recorded a total of 41.5 hours for that week. That number presumably included 4 hours for lunch. Certainly, from the perspective of RMR’s pay roll manager, it could reasonably be assumed that if Vitali had actually worked through more than one lunch that week, she would have similarly informed the payroll department or her supervisor about her extra work, as she did on March 15th. If fact, the record makes clear that Vitali herself confirmed that she only worked through lunch on one day. She responded to Juppe that, ." . . it was just for Monday 3/15/10 that I was not able to take lunch." The summary judgment record is devoid of any evidence that Vitali brought the issue of working through lunch to the attention of RMR on any other occasion prior to her termination.
In short, there is nothing in the record to suggest that RMR knew or should have known that Vitali worked more than forty hours per week and was entitled to overtime during her time at RMR. There are no time sheets, e-mails, or other records to support Vitali’s assertion that she regularly worked through lunch three or four times per week and was therefore entitled to overtime because she worked more than forty hours per week. She does not offer the testimony of anyone that RMR managers saw her working through lunch nearly every day of every week and should have known that she was not submitting her overtime hours. Vitale’s reliance on the emails sent to RMR’s pay roll manager after RMR changed the Kronos system to require hourly employees to sign in and out for lunch is entirely unpersuasive. First, those emails were received after Vitali was terminated and could not have informed RMR “constructively” of employee lunch practices prior to their receipt. Moreover, the emails refer to a veiy few incidents over two months. And, the content of the emails actually reveal that the majority of them refer to checking up on an employee who failed to clock in and out at lunch according to the new record keeping policy, employees who had worked approved overtime, or an employee who wanted to take a short lunch so that the employee could leave early. They are not evidence of management’s knowledge that employees were routinely being required to work more than forty hours a week without overtime.
The cases that Vitali cites in support of her opposition actually highlight what is missing from Vitali’s proof in her case. In Reich v. Dept. of Conservation and Natural Resources, 28 F.3d 1076 (11th Cir. 1994), Allen v. Bd. of Pub. Ed. for Bibb County, 495 F.3d 1306 (11th Cir. 2007), and Kuebel v. Black & Decker, Inc., 643 F.3d 352 (2nd Cir. 2011), the defendant employer had issued a directive that employees were not allowed to work in excess of forty hours a week and thereby become eligible for overtime pay. In each case, there was evidence in the summary judgment record that employees had no choice but to exceed the forty-hour *293 limitation to do their jobs, but were then instructed by their managers to enter false time records. Moreover, in each case there was also evidence in the summaiy judgment record that management of the defendant employer knew or should have known both that overtime work was being performed and false reporting had occurred. In Reich, an outside consulting firm was retained to investigate ways to improve efficiency within the defendant department. The consultant testified that her team learned that the employee/conservation officers were working in excess of forty hours a week during hunting season in order to adequately perform their duties and falsifying their weekly reports to conceal their overtime. This information had been included in a report sent to management. In Allen, several employees testified that they were instructed to take back time sheets that reported more than forty hours and submit falsified sheets; indeed, there was evidence that a supervisor tore up a time sheet that reported more than forty hours in the presence of the employee. Similarly, in KeubeZ, the plaintiff testified that he explained to his manager that he was working more than forty hours, but was specifically told by two identified supervisors that he could not record more than forty hours worked a week, no matter how many hours he actually worked.
By contrast to the present case, Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337 (2008), is also instructive. In Salvas, Wal-Mart had rules in force designed to insure that all hourly employees clocked in and out at the beginning and end of their shifts, as well as for all breaks, and never worked “off the clock.” Time records were electronically submitted to a central office and elaborate systems were put in place to flag and investigate any instance in which record reviews indicated violations of this policy. Wal-Mart, however, also placed substantial pressure on store managers to minimize labor costs. The plaintiffs produced testimony from mid-level managers that they were instructed by store managers to insert meal breaks into hourly employees’ records that the employees had not taken and to routinely “shave time” through other false reporting techniques. There was also evidence from multiple employees concerning work performed off the clock and their being forced to work through meal and rest breaks. Based on this testimony and expert statistical analysis of business records that an expert opined demonstrated company-wide practices consistent with the evidence presented by the employees and mid-level managers, the Supreme Judicial Court held that summary judgment for Wal-Mart had improvidently been granted, notwithstanding the rules it had implemented to insure that employees received unpaid lunch breaks and did not work “off the clock.”
No evidence of the kind that precluded the entry of summary judgment against the plaintiffs in Reich, Allen, Keubel and Salvos exists in this present case. First, while hourly employees were to receive prior approval before working overtime, the evidence is that when necessary overtime was approved. In fact, Vitali was paid for overtime during the period in question. Other than Vitali’s own assertion that she worked three to four lunches a week that she never reported, there is no evidence from any other employee that he or she was doing the same. Certainly, absent direct evidence that RMR management knew that Vitali was working through lunch, constructive knowledge requires a sufficient critical mass of employees engaged in uncompensated lunch time work to establish that RMR management should have known that this unreported work was commonplace. Indeed, Vitali herself did not testify that she ever complained to a supervisor that she had regularly to work through lunch to keep up with the work assigned to her. The documentary evidence that was placed in the summary judgment record shows that on one occasion that Vitali did work through lunch, she brought this to the attention of management.
RMR established reasonable time reporting procedures for its hourly employees, provided employees with an overtime policy that required advanced approval, and hired payroll department employees to explain and enforce these policies. Even if this court assumes that Vitali regularly worked through multiple lunches each week and would be entitled to overtime as a result, as she now claims, it is undisputed that Vitali failed to follow RMR’s time reporting procedures and failed to seek advance approval. See White v. Baptist Memorial Health Care Corp., 699 F.3d at 876. She has offered no record evidence that she complained about this to RMR nor that any other RMR hourly employee did so. Vitali has not met her burden of coming forward with admissible evidence that RMR had knowledge, constructive or otherwise, that Vitali purportedly worked through multiple lunches each week and therefore that RMR violated G.L.c. 151, §1A. See Prime Communications, Inc. v. Sylvester, 34 Mass.App.Ct. at 711. Accordingly, RMR is entitled to summaiy judgment dismissing Vitali’s sole remaining claim.
The Motion for Class Certification
Because Vitali is the only profeired class representative and the court has granted RMR’s motion for summaiy judgment dismissing her claim, the motion for class certification is moot. See Doe v. The Governor, 381 Mass. 702, 704-05 (1980) (noting that “if the individual plaintiffs may not maintain the action on their own behalf, they may not seek relief on behalf of a class”). See also McGovern Physical Therapy Assocs. v. Metropolitan Prop. & Cas. Ins. Co., 802 F.Sup.2d 306, 316 (D.Mass. 2011) (determining that motion to dismiss or strike class action allegations was moot after ruling that none of individual claims survived).
ORDER
For the foregoing reasons, Defendant Reit Management & Research LLC’s Motion for Summaiy Judgment is ALLOWED. Plaintiff Donna Vitali’s Complaint *294 is DISMISSED. In consequence Plaintiffs Motion for Class Certification is moot. Final judgment shall enter dismissing the complaint.

Vitali, however, offers no affidavits or testimony from any individuals to support this assertion.

Juppe explained at her December 12, 2012 deposition that because Vitali’s “total number of hours logged in Kronos didn’t exceed 45" that there was nothing Vitali needed to do ’’because the time she [Vitali] didn’t take for lunch wouldn’t have come into play with calculating overtime." Vitali’s electronic Kronos time sheet for March 15, 2010 indicates that she signed in at 9:08 a.m., signed out at 5:16 p.m. Vitali recorded a total of 41.5 hours in Kronos from Monday, March 15, 2010 to Friday, March 19, 2010.

In fact, such record evidence as exists is inconsistent with Vitali’s assertion. As noted above, the only instance in which there is any documentary evidence of work during the lunch hour is the email that Vitali sent on March 15, 2010, in which she stated that she had to work through part of her lunch, had failed to record her time, and wanted to know what to do. Additionally, in September 2011, apparently in response to criticism that Vitali received concerning a mistake made in paying an invoice, Vitali wrote to her supervisor: “I am working from the time I come in, excluding lunch, until the time I leave.”

Juppe’s response to Vitale was mathematically inaccurate. If Vitale worked through her lunch hour on March 15th and recorded forty-four and half hours physically worked that week, for example by staying past 5:00 an hour each day, she would be due a half an hour of overtime. In the context of the email exchanges between Vitale and Juppe, her comment would not have been misleading. As noted above, a previous portion of the e-mail chain specifically identifies forty hours “physically worked” as the threshold amount of time that Vitali needed to be eligible for overtime.