Kaplan, Mitchell H., J.
The plaintiff, Donna Vitali, on behalf of herself and all others similarly situated, filed this action against the defendant, Reit Management & Research LLC (RMR), asserting claims for: violation of G.L.c. 151, §1A (the statute governing pay for overtime work—Count I); breach of contract (Count II); and unjust enrichment/quantum meruit (Count III). Thereafter, Vitali voluntarily dismissed Counts II and III.
In July 2014, this court allowed RMR’s motion for summary judgment on the only remaining count and, therefore, did not address her motion for class certification. Vitali v. Reit Management & Research, LLC, 32 Mass. L. Rptr. 288 (Mass.Super.Ct. July 10, 2014) (Kaplan, J.). Vitali appealed, and the Appeals Court reversed the grant of summary judgment finding material disputed facts in the summary judgment record sufficient to permit a jury to return a verdict in her favor. See Vitali v. Reit Management & Research, LLC, 88 Mass.App.Ct. 99, 111 (2015). The Appeals Court expressed “no view” on the issue of whether this case could properly be maintained as a class action. Vitali v. Reit Management& Research, LLC, 88 Mass.App.Ct. at 112 n.24.
In consequence, Vitali’s motion for class certification pursuant to Mass.RCiv.P. 23 is now before the court. Vitali requests that the court certify a class “consisting of all current and former Reit employees who worked as an hourly employee in Massachusetts at any time between February 2010 to November 2011.”[2] After remand, the parties filed additional memoranda in support of and opposition to this motion, and, on February 2, 2016, the court convened a hearing on the motion. For the reasons that follow, Vitali’s motion for class certification is DENIED.
BACKGROUND
The opinions previously issued by this court and the Appeals Court set out the background facts. See Vitali v. Reit Management & Research, LLC, 32 Mass. L. Rptr. at 288. See also Vitali v. Reit Management & Research, LLC, 88 Mass.App.Ct. at 100-02.[3] The court generally incorporates those facts into this decision, without repeating all of them. This decision will restate those facts necessary to provide context to the pending motion, at times quoting directly from this court’s July 2014 decision, and discuss additional evidence drawn from the summary judgment/class certification record relevant to the question of class certification.
RMR is a private company that primarily manages real estate held in the portfolios of public companies. It has a principal place of business in Newton, Massachusetts, as well as regional offices in twenty other locations. It employs both professionals and support staff. Vitali is a former at-will employee of RMR. She worked in the accounts receivable department of RMR’s corporate office in Newton from March 1, 1999 until October 14, 2011; her job title was “accounts receivable accountant.” She worked with other employees in an area in the Newton office in which each employee had a short-walled cubicle. Vitali was an hourly employee, compensated at a rate of $25.80 an *399 hour in October of 2011. Her assigned work hours were 9:00 a.m. to 5:00 p.m., five days a week. RMR provided its hourly employees, including Vitali, with a paid one-hour meal break each workday. In consequence, RMR paid her for forty hours of work per week even though she was only required to “physically work” (as RMR uses that term) for thirty-five hours. According to Vitali, employees in her group took their lunch when they could; there was no set schedule. This was consistently RMR’s policy since she started working at the company in 1999.
Vitali attests that she frequently worked during lunch. According to her, during “monthly closes, quarter closes, conference calls forbad debt, audits ... [or during periods of] software conversion,” she was required to work during lunch. Vitali estimates that from 1999 to 2011, she consistently worked three to four times per week during lunch. She avers that, “there was never a lack of work,” and whether she worked three or four times a week during lunch “depended on what came up and the volume” of work. Vitali believes that the people who brought work to her could verify that she typically worked three or four times a week during lunch.[4]
When Vitali first started working at RMR, the company required Vitali and other hourly employees to report their hours worked on paper time sheets. The paper time sheets were designed to cause employees to enter the following information: time in for the day; time out for lunch; time back from lunch; time out for the day; and any approved overtime hours worked. The paper time sheets also allowed employees to record their vacation, sick, and holiday hours. On the bottom left-hand comer of each time sheet, immediately above the employee’s signature, was the following statement: “(e]mployees may NOT work overtime without advance approval from their supervisor” and “lunch time are not hours physically worked in the computation of OT.”
RMR installed an electronic time keeping system in February 2010 called “Kronos.” In connection with the roll-out of Kronos, RMR distributed a manual to employees with written instructions regarding its use and an e-mail message dated February 9, 2010. The manual included instructions and sections entitled “Logging In,” “Updating Time,” and “Viewing/Updating/ApprovingTime.” It informed employees that they should contact Melissa Juppe or Mike Parcels in payroll with any issues. Hourly corporate employees were instructed to log in when they began work and log out when they finished at the end of the day, but not to log out and back in at lunch. Unless they took other steps, discussed below, in computing hours worked, RMR management would assume that they took their paid one-hour lunch break each day.
Vitali began submitting electronic time sheets through Kronos on February 15, 2010. Vitali’s Kronos time records for the period February 15,2010 through October 14, 2011 show that she was compensated for fifteen hours of overtime during that period.
Vitali never entered any time in Kronos for work performed during her one-hour paid lunch break. However, on March 15, 2010, Vitali e-mailed the payroll department to notify them that she had worked through lunch. The e-mail from Vitali to Mike Parcels stated:
I was not able to take lunch today due to so much Intercompany and meetings the rest of the week, so I wasn’t sure how I mark that on my time sheet/Kronos.
Parcels forwarded the message to Juppe, and Juppe responded to Vitali as follows:
Thank you for the heads up Donna. If your physically worked hours for this week is over 40 hours we can discuss how the lunch time for today should be recorded.
Thereafter, Vitali responded to Juppe:
Ok lady it was just for Monday 3/15/10 that I was not able to take lunch. You can tell me Monday what I need to do I guess. Thanks.
On Monday, March 22, 2010, Juppe sent Vitali the following e-mail message:
Thank you for your e-mail. There is nothing you need to do for this as your total hours for the week do not exceed 45. The hours listed on the Kronos timecard will be paid at your regular hourly rate.[5]
Vitali forwarded this March 22, 2010 e-mail to her personal e-mail account. This was the only occasion after Kronos was implemented that Vitali notified payroll that she had worked during her lunch hour. As discussed above, however, Vitali maintained at her deposition that she consistently worked three to four times per week during lunch.
Although the Kronos system included a procedure to record time worked during lunch that was explained in an email in which the roll out of Kronos was announced, Vitali maintains that she was never trained in how to use this feature and never employed it.
Vitali and all other RMR employees received a handbook. Vitali believes that she received a version of the handbook in 1999 and that she, along with other employees, received revised handbooks through email at various times. Section 5.6 of the handbook discussed time records and states:
All personnel will be provided with either an electronic time recorder or paper timesheet. Electronic or paper timesheets are to be recorded daily and completed accurately. You must record the actual starting and stopping times and properly add the hours and minutes worked. Inaccurate reporting of hours worked will be deemed to be falsification of time records and will result in disciplinary action, *400 up to and including termination. Tampering with electronic or paper timesheets will be grounds for disciplinary action, up to and including termination.
Paper timesheets should be turned in for approval as directed by your supervisor. Completed timesheets should show the total hours worked, and have all required signatures before being submitted to the designated individual.
Section 6.2.1 of the handbook sets forth RMR’s overtime policy as follows:
Overtime is compensated at the rate of time and a half for all hours worked in excess of forty hours per week (lunch period and benefit hours are not worked hours) or as provided for by state law. Overtime must be authorized by the appropriate manager/supervisor in advance by signing the Overtime Approval form. Employees may not work overtime without first obtaining advanced approval from their manager/supervisor. The signed Overtime Approval Form must accompany the timesheet for the week in which the employee worked overtime.
RMR terminated Vitali in October of 2011. There is nothing in the record that suggests that the termination had anything to do with hours worked or time recording. Prior to her termination, Vitali engaged in e-mail correspondence with her supervisor on October 5, 2011 in which she provided a written response to a September 15, 2011 meeting.[6] In her last line of written text, Vitali noted, “I am working from the time I come in, excluding lunch until the time I leave.”
Effective November, 21,2011, RMRbegan requiring hourly employees to log out for their lunch breaks in Kronos.
According to Matthew Jordan, senior vice president, treasurer, and chief financial officer of RMR, Vitali has been the only Massachusetts RMR employee to formally complain that he or she did not receive overtime pay for hours worked over forty hours in a given week during the class period. He also states that Vitali did not complain about the overtime issue until after her employment ended. Jordan explains that hourly Massachusetts employees had different work habits and payroll recording practices, depending on individual preferences, their workload, and their supervisors. Some employees regularly took lunch breaks every day, but other employees sometimes worked through their lunch break even though RMR discouraged this practice. According to Jordan, “An individualized inquiry of each employee and their payroll records is necessary to determine (1) whether they worked during any lunch break in any week; (2) whether working through that lunch caused the employees!’] total worked hours to exceed forty in that week; (3) whether they obtained supervisor approval prior to working such overtime and if not, why not; (4) why they worked overtime on that particular week; (5) whether they reported working overtime through Kro-nos or through some other means; (6) whether they knew how to use Kronos to report hours worked during lunch, and whether they received overtime compensation at a rate of time-and-one-half for any hours worked over 40 in a given week.”
RMR also submitted affidavits from several employees (Lisa DiTullio, Kelly E. Martin, Daniel W. McSoley, and Lisa B. Nobilini). According to these employees, they each understood that RMR provided its hourly corporate employees with a one-hour paid lunch break every work day. For instance, McSoley has been employed at RMR since June 2011 as a properly accountant. He was paid on an hourly basis and understood that under RMR’s overtime policy, he would be paid overtime compensation for all hours he worked over forty hours per week. This policy was contained in the employee handbook. McSoley used Kronos to log in the hours he worked, received instructions on how to use Kronos, and understood that if he worked through a lunch break, he would tell his supervisor, and his timecard would be adjusted, although his practice was not to work through lunch. McSolely believes that he has been paid for all hours he has worked and is not aware of any overtime for which he has not been properly paid. He knows that RMR has a procedure for correcting errors in an employee’s paycheck or to request additional pay for time worked, but McSolely has never had to use this procedure.
Nobilini has been employed at RMR since February 2009 as a lease analyst. She is paid on an hourly basis. At certain times, the Lease Administration Department was very busy, and her supervisor told her that she did not need to seek approval prior to working overtime. From the beginning of her employment until early 2011, Nobilini generally did not take a one-hour lunch break. She typically worked through lunch because she wanted to stay focused on her work and had been accustomed to working through lunch at a prior job. Nobody from RMR ever told her that she had to work through lunch; it was simply her preferred practice. Nobilini used Kronos to log in her hours worked, and she was told how to use a drop-down menu in Kronos to record times when she worked through lunch. Beginning in early 2011, Nobilini stopped working through lunch because her supervisor and the Human Resources Department told her that she needed to take a break every day. Nobilini recorded all of her worked hours, including worked lunches and overtime, in Kronos. Nobilini believes that she has been paid for all of the hours she has worked at RMR and is not aware of any overtime for which she has not been properly paid.
DiTullio and Martin are human resources assistants in the Human Resources Department and are each paid on an hourly basis. They both typically took one-hour lunch breaks each day and did not work during lunch. They used Kronos to track their hours *401 worked and knew that Kronos allowed them to enter the amount of time they worked during lunch, if applicable. DiTullio and Martin are not aware of any overtime for which they have not been properly paid.
While the hourly corporate employees did not have to punch in and out for lunch during the putative class period, hourly field employees and information technology employees used different protocols to record their time. They were required affirmatively to record all hours worked and charge their time to specific projects; there was no presumed reduction for a paid lunch period. The field employees did not use Kronos, and the IT employees did not use it in the manner that the corporate hourly employees did. RMR has submitted evidence showing (and Vitali has offered no contrary evidence) that there were 65 hourly corporate employees that were directed to use Kronos in the same manner as Vitali.
DISCUSSION
This court has broad discretion in determining whether to certify a class action. Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 361 (2008) (hereafter Salvas). See Marquis v. Google, Inc., 32 Mass. L. Rptr. 269, 2014 WL 4180400, at *10-*16 (Mass.Super.Ct. July 27, 2014) (Kaplan, J.) (discussing standard for class certification under Mass.R.Civ.P. 23). The court, however, may not grant class status on the basis of speculation or generalization regarding the satisfaction of the requirements of Mass.R.Civ.P. 23, or deny class status by imposing, at the certification stage, the burden of proof that will be required of the plaintiffs at trial. Weld v. Glaxo Wellcome, Inc., 434 Mass. 81, 84-85 (2001). “The standard defies mathematical precision ...” Id. at 85.
Under Mass.R.Civ.P. 23, the plaintiff must show that (1) the class is sufficiently numerous to make joinder of all parties impracticable, (2) there are common questions of law and fact, (3) the claims or defenses of the representative party are typical of the claims or defenses of the class, and (4) the named plaintiff will fairly and adequately protect the interests of the class. See Mass.R.Civ.P. 23(a). In addition, the plaintiff must show that common questions of law and fact predominate over individualized questions and that the class action is superior to other available methods for fair and efficient adjudication of the controversy. See Mass.R.Civ.P. 23(b). Under Mass.R.Civ.P. 23, a party moving for class certification is only required to provide “information sufficient to enable the motion judge to form a reasonable judgment” that certification requirements are met. Aspinall v. Philip Morris Cos., 442 Mass. 381, 392 (2004) (citation omitted).
Vitali contends that “(t]his case is ideally suited to proceed as a class action.” She argues that RMR set up its payroll system based on the flawed assumption that every hourly corporate employee took one hour for lunch each day, with the result that these employees were not paid for all of the overtime wages owed to them from February 2010 to November 2011. In other words, although RMR offered as a benefit to its hourly employees a paid one-hour lunch break each day, it did not pay overtime unless an employee recorded more than forty-five hours of work, because of this assumption that each employee had taken an hour off for lunch each day. If, however, employees did not actually take their hour lunch break each day and worked more than forly hours per week, they might not be paid all of their required overtime—depending on the amount of lunch time worked in a week in which more than forty hours of time were recorded. Stated differently, if in any week an employee’s hours of unrecorded worked lunch and recorded work hours in excess of forty exceeded five, that employee would have been due overtime pay and G.L.c. 151, §1A would have been violated.
Vitali admits that the damages to her and other similarly situated employees are modest, but she notes that when the purported losses “are aggregated over dozens and dozens of employees . . . the impact is expected to be substantial.” See Machado v. System4, LLC, 465 Mass. 508, 514-15 (2013) (recognizing that “Wage Act provides for a substantive right to bring a class proceeding” and that there are “very legitimate policy rationales underlying the Legislature’s decision to provide for class proceedings under the Wage Act”). She argues, among other things, that her case is “strikingly similar” to Salvas and that she has properly established all of the requirements for class certification under Mass.R.Civ.P. 23.[7] Vitali also asserts that the Appeals Court’s decision provides further support for her argument that class certification is warranted here because it found that there was sufficient evidence for a jury to find that she worked through lunch in weeks that she recorded more than forty hours worked, and that RMR managers knew or should have known that she was doing this.
RMR opposes Vitali’s motion and argues that Vitali cannot satisfy any of the requirements for class certification under Mass.R.Civ.P. 23: numerosity, commonality, fypicalify, adequacy, predominance, and superiority. RMR points to the individual nature of Vitali’s claims and notes that its company-wide overtime policy was to pay overtime to any employee who worked more than forty hours in a week. It contends that meal breaks in which employees performed work were indeed included as “working hours” for purposes of calculating overtime, its time keeping system allowed all employees, including corporate hourly employees, to enter time worked during their lunch hour, and the employees were taught how to use Kronos to record time worked during lunch. RMR also notes that only 65 hourly corporate employees recorded time in Kronos in a manner that led RMR to apply the “hour off for lunch” assumption. As to the Appeals Court’s decision, RMR submits that the court explicitly de- *402 dined to consider any issues related to class certification and the Appeals Court’s finding that there were material facts in dispute relating to Vitali’s individual claim lends no support to her motion for class certification.
After a thorough review of the record and the arguments of counsel, Vitali’s motion for class certification is denied. More specifically, this court finds that Vitali has not adequately demonstrated either commonality or predominance. The court therefore will not address the other Rule 23 requirements.[8]
Commonality
Vitali is required to show that there are common questions of law and fact. See Mass.R.Civ.P. 23(a). “The persons suing as representatives of a class must show by the allegations of their bill that all the persons whom they profess to represent have a common interest in the subject matter of the suit and a right and interest to ask for the same relief against the defendants.” Spear v. H.V. Greene Co., 246 Mass. 259, 266 (1923). “It is not essential that the interest of each member of the class be identical in all aspects with that of the plaintiffs.” Id.
However, “(cjommonality requires the plaintiff to demonstrate that the class members ‘have suffered the same injuiy’ . . . This does not mean merely that they have all suffered a violation of the same provision of law . . . Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011). “What matters to class certification ... is not the raising of common ‘questions’—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.” Id. (citation omitted).
Commonality is absent here. Vitali asserts that “(e]very employee at Reit was subject to the exact same flawed payroll policy.” The court disagrees. First, the overtime policy set out in the employee handbook clearly complies with the Wage Act: “Overtime is compensated at the rate of time and a half for all hours worked in excess of forty hours per week (lunch period and benefit hours are not worked hours) or as provided for by state law.” Second, Kronos included a means to record time worked during the lunch hour. Third, in the first paragraph of the email that announced the rollout of Kronos, that specifically addressed hourly corporate employees like Vitali, RMR stated: “Hourly employees do not have to punch in and out for lunch. If you are to work through a lunch, please use the ‘hours worked’ code and add the amount of in time worked in increments of. 25 only. ” It is clear that many employees knew this and used this feature of Kronos. As the Appeals Court noted, the existence of these policies and pronouncements do not protect an employer that either knew or should have known that employees were working unrecorded overtime and accepted the benefits of this labor without compensating them. 88 Mass.App. at 104. In this case, however, there is no evidence of any company policy either designed to, or with the effect of, undermining these stated policies. While Vitali testified that she worked through lunch three or four times each week without recording the time and her supervisors knew this, there is an absence of evidence corroborating her testimony or establishing that any of her co-workers did this.
To prove her case a trial jury will have to resolve in Vitali’s favor a number of factual issues unique to her, including, but not limited to: whether Vitali regularly worked through lunch without reporting the worked time; whether she worked more than forty hours a week in the weeks that she worked through lunch making her eligible for overtime; whether supervisors knew she worked more than forty hours a week; and whether Vitali understood how to properly report her worked hours in Kronos or did not record her time because she was not instructed on how to do it. Were a jury to find that Vitali frequently worked through lunch, that would not establish that other employees were also working through lunch. Moreover, it would be necessary to show that other employees were doing as Vitali did and not recording their time in Kronos. And, even if a jury were to conclude that Vitali did not understand how to record lunch time worked in Kro-nos because of inadequate instruction, that would not prove that other employees who worked through lunch were uninformed concerning how to record the time. Finally, if Vitali proved that her supervisors were regularly giving her work to do at lunch so that RMR management knew or should have known that Vitali was commonly working through her lunch hour, that would not be proof that other supervisors were doing the same thing to other employees (who then did not record their time). Indeed, Vitali testified that there were only four other employees in the accounts payable group. Even if Vitali proved that her group was routinely given work that had to be done at lunch (and there is no evidence of that other than Vitali’s own testimony), there is no evidence that such a practice was consistent across all of the corporate hourly employees.[9]
While a court should not deny class status by imposing, at the certification stage, the burden of proof that will be required of the plaintiffs at trial, there must be something beyond pure speculation supporting the contention that there are a significant number of other individuals experiencing the same allegedly unlawful treatment as the plaintiff such that proof of her claim *403 would establish that the other employees in the putative class were being subjected to the same unlawful conduct. Weld v. Glaxo Wellcome, Inc., 434 Mass, at 84-85. In this case, Vitali’s evidence of her own claim is essentially based entirely on her own testimony regarding her own experience as a corporate hourly employee working in the accounts payable group. That is enough to survive summary judgment. However, Vitali has not identified other individuals who allegedly received similar treatment, nor any company policy to treat others this way. Proof that this happened to Vitali would not be proof that it happened to a class of similarly situated employees.
To the contrary, a fact finder would have to look individually at each putative class member’s particular situation to answer these questions and to determine whether RMR would be liable to that class member for overtime compensation based on its actual or constructive knowledge that the class member was working unpaid overtime because he or she did not record time worked during lunch and had additional overtime hours so that he or she would be eligible for overtime pay.
RMR cites a recent Federal case in support of its position, Raposo v. Garelick Farms, LLC, 293 F.R.D. 52 (D.Mass. 2013); the court finds it instructive. In Raposo, the plaintiffs, former truck drivers for Gar-elick, a dairy distribution business, challenged Garelick’s policy of automatically deducting thirty minutes from drivers’ time cards for mandatory, unpaid meal breaks. Raposo v. Garelick Farms, LLC, 293 F.R.D. at 53. The plaintiff drivers claimed that Garelick owed them compensation for unpaid meal breaks that they did not take because they were frequently forced to work through the meal breaks. The drivers also claimed that even when they took meal breaks, Gar-elick imposed restrictions on where and how the breaks should be taken for that time to be compensa-ble. The plaintiff drivers requested that the court certify a class consisting of all individuals who worked as delivery drivers for Garelick in Massachusetts since September 27, 2005. The court explained that, “(e]valuation of plaintiffs!’] claim depends upon the answers to two questions: 1) Did all drivers in the class work through meal breaks and, if so, why? and 2) If any driver worked through meal breaks, was he compensated for that time?” Id. at 56. It concluded that neither of these inquiries generated sufficiently common answers to satisfy the commonalify requirement: the record indicated that not all drivers worked through their meal breaks; several drivers stated that they always or almost always took their meal breaks; some drivers skipped their meal breaks to go home early; and some drivers were compensated for working through meal breaks after notifying their supervisor. Ultimately, the court determined that “[b]ecause the questions essential to the determination of plaintiffs’ claims are not subject to classwide resolution plaintiffs’ proposed class fails to satisfy the commonality requirement” and the court denied class certification. Id. at 57-58.
As noted above, in this case four RMR employees submitted declarations—all of them averred that they understood RMR’s overtime policy, most took their lunch breaks, and at least one employee (Nobilini) did not take a lunch break because that was her preference. Notably, none of these employees thought that they were entitled to overtime. That could have been for a number of reasons, e.g.: they did not work through lunch; they frequently worked through lunch but did not stay late so they never worked more than foriy hours; or they frequently worked through lunch but recorded their time when they did. Clearly, an individual factual determination would be required in each case. And, while the declarations of these four individuals is certainly not dispositive, Vitali has not identified any employee who suffered the injury she claims, nor that any other employee ever complained about working uncompensated overtime.
Since this court has determined that Vitali has failed to demonstrate commonality under Mass.R.Civ.P. 23(a), the court could end its analysis here. See Raposo v. Garelick Farms, LLC, 293 F.R.D. at 58. However, the court will also consider whether the plaintiffs class claims satisfy commonality's close cousin, predominance.
Predominance
Under Mass.R.Civ.P. 23(b), Vitali is required to show that common questions of law and fact predominate over individualized questions. See Mass.R.Civ.P. 23(b) and Salvas, 452 Mass. at 363 (“The predominance test expressly directs the court to make a comparison between the common and individual questions involved in order to reach a determination of such predominance of common questions in a class action context”) (citation omitted). The predominance requirement is satisfied by a sufficient constellation of common issues between class members and cannot be reduced to a mechanical, single-issue test. See Weld v. Glaxo Wellcome Inc., 434 Mass. at 92. See also Waste Mgt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000).
Vitali argues that her claims are similar to those asserted in Salvas, and that case provides strong support for her position that common claims predominate in the instant case. In the Court’s view, Salvos demonstrates why common claims do not predominate here. In Salvas, the record contained evidence of substantial company-wide violations of the company’s stated no “off-the-clock work” policy. There was evidence that: management was aware that store managers were altering time cards to decrease payroll expenses and directing associates to work off-the-clock; a nationwide audit revealed time-shaving techniques at many stores; and there were many complaints from numerous current and former Mas *404 sachusetts Walmart employees concerning time shaving and missed rest and meal breaks. Additionally, the plaintiffs offered an expert witness’s analysis concerning anomalies in Walmart’s time keeping records and the conclusions that could be drawn from those anomalies. The Supreme Judicial Court explained that the “salient inquiry is whether the plaintiffs’ claims are sufficiently cohesive to warrant adjudication by representation, no rote formula can determine whether the plaintiffs have met their certification burden on the question of predominance. The judge must engage in an individualized pragmatic evaluation of the relationship between and the relative significance of the common and individual issues.” (Internal quotations and citations omitted.) Id. at 364. It concluded that there were predominant issues regarding companywide policies that would be common to all plaintiffs’ claims. Even if individualized issues of damages might have to be addressed if liability was established, these common factual issues concerning allegedly unlawful practices were paramount with respect to liability and could be determined on a class wide basis. Id.
In this case, there is no evidence in the record that any employee other than Vitali complained of performing unpaid overtime because of the difficulty of reporting work during lunch in the Kronos system. There is certainly no evidence that management instituted any type of policy intended to cause employees to work off-the-clock. There is no expert analysis of company records that demonstrates that employees were likely working uncompensated overtime because they did not record work during lunch. It may be that Vitali will prove that this happened to her, but she has not demonstrated that in doing so she will establish facts common to a class of hourly employees.
Moreover, while this court is not deciding this motion based upon either typicality or whether Vitali is an adequate class representative, it may be noted that Vitali actually once expressly asked about how to record time worked at lunch, responded to inquiry with a comment that this just happened one Monday, and then never followed-up. She later wrote in a memo to her supervisors that she worked all day each day, except for lunch breaks. Finally, there is no evidence that she ever mentioned to anyone that she was working through lunch several days a week and not recording it, or had worked unpaid overtime, until her employment was terminated, for reasons unrelated to issues raised by this case. It is not at all clear that Vitali’s inability to prove to a jury that in any given week her unrecorded lunch work, when added to her reported hours worked in excess of forty, totaled more than five hours ought to preclude other employees, presently unidentified, from asserting such a claim based upon their unique factual circumstances, as would be the case if Vitali’s claim was certified as a class action.
ORDER
For the foregoing reasons, Plaintiff Donna Vitali’s Motion for Class Certification is DENIED.

 During this time period, RMR used a newly installed electronic time-keeping system called “Kronos” and certain employees were not required to punch in and out when they took their lunch break.

 Nile Appeals Court described the nature of the dispute as follows: “Vitali was scheduled to work from nine to five, five days per week, with a paid one-hour lunch break. Both sides agree that lunch breaks do not count toward overtime. They also agree that if an employee has to work during what otherwise would be a lunch break, the employee gets no extra pay for doing so (since she or he is already being paid for that time). However, such worked lunch time can be counted toward the forty-hour overtime threshold, thus potentially indirectly increasing the employee’s overall compensation. Vitali claims that she regularly worked during her lunch breaks even though that time was not recorded in the particular timekeeping system that the company used during the relevant period. She brought this action pursuant to G.L.c. 151, §1A, purportedly as a class action, seeking the extra compensation that would be due if she and others similarly situated were credited for such lunch time work.” Vitali v. Rett Management & Research, LLC, 88 Mass.App.Ct. at 100.

 Vitali, however, offers no documents, affidavits or testimony from any other individuals to support this assertion. Her claims are supported only by her own testimony.

 Juppe explained at her December 12, 2012 deposition that because Vitali’s “total number of hours logged in Kronos didn’t exceed 45" that there was nothing Vitali needed to do ’’because the time she [Vitali] didn’t take for lunch wouldn’t have come into play with calculating overtime." Vitali’s electronic Kronos time sheet for March 15, 2010 indicates that she signed in at 9:08 a.m. and signed out at 5:16 p.m. Vitali recorded a total of 41.5 hours in Kronos from Monday, March 15, 2010 to Friday, March 19, 2010.

 Nhe e-mail is attached to RMR’s opposition to Vitali’s motion for class certification as part of Exhibit 6.

 Salvas is discussed infra at 18-19.

 RMR argues at length that the court should also deny Vitali’s motion based on her failure to demonstrate numerosity. As noted above, there are only 65 employees who recorded time in the same manner as Vitali and might arguable be similarly situated to her, a number probably sufficient to satisfy the numerosify requirement. RMR, however, points out that of those 65 employees, most signed employment agreements that included binding arbitration clauses in which they waived their right to participate in a class action in Superior Court adjudicating claims arising out of their employment, including Wage Act claims. See. e.g., Dixon v. Perry & Slesnick, P.C., 71 Mass.App.Ct. 271, 278 (2009) (“We conclude that [plaintiff] waived her right to judicial resolution and is compelled to arbitrate her Wage Act claim”). In consequence, according to RMR, there now exist only 28 employees who, in theory, could be members of Vitali’s proposed class. The court notes that these employment agreements were executed after Vitali filed her case as a putative class action, but before the motion for class certification was filed. The court is unaware of any case that directly addresses the effect of an arbitration agreement signed under these circumstances on an employee’s ability to be a member of a class asserting Wage Act claims and declines to address this issue in this case.

 Vitali testified that she always ate lunch at her desk but the other members of her group went out to lunch.